CONCURRING AND DISSENTING OPINION BY
JUDGE COHN JUBELIRER
I, respectfully, cannot completely agree with the thoughtful Majority opinion and therefore write separately.
I concur with the Majority’s decision insofar as it holds that the Commonwealth has not stated claims under Sections 2(4)(v), 2(4)(ix), and 2(4)(x) of the Unfair Trade Practices and Consumer Protection Law (UTPCPL),[1] because the representations in-the advertising materials are puf-fery. I also agree that the care plans, resident assessments, and bills are not advertising and are, therefore, not actionable under the above provisions. However, Section 2(4)(xxi) of the UTPCPL differs from the other provisions relied upon by the Commonwealth as Section 2(4)(xxi) establishes a cause of action to remedy “any ... fraudulent or deceptive conduct' which creates a likelihood of confusion or of misunderstanding.” 73 P.S. § 201-2(4)(xxi). There is no requirement under this “catch all” provision that the representation be made in an advertisement.
By addressing Section 2(4)(xxi) separately from Sections 2(4)(v), 2(4)(ix), and 2(4)(x), the Majority recognizes this distinction. However, the Majority, sua sponte, raises and then sustains a preliminary objection on the basis that the Commonwealth did not attach a copy of the writings that underlie the cause of action. Commonwealth v. Golden Gate Nat’l Senior Care LLC, 158 A.3d 203, 224 (Pa. Cmwlth. 2017). Golden Gate National Senior Care LLC (Golden Gate) did not raise this as a basis for its preliminary objections, see Rule 1032(a) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1032(a) (a “party waives all ... objections which are not presented ... by preliminary objection”), and it is not jurisdictional. Because the Court addressed an objection not raised by Golden Gate, the Commonwealth could not respond by either amending its pleading or explaining why the writings could not be attached. See Pa. R:C.P. No. 1028(c)(1) (“A party may file' an amended pleading as of course within twenty days after service of a copy *240 of preliminary objections”); Pa. R.C.P. No. 1019(i) (“[w]hen any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the uniting or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing” (emphasis added)). I note that the writings at issue could contain confidential medical information. See 42 U.S.C. § 1396r(c)(l)(A)(iii) (providing residents of skilled nursing facilities who receive medical assistance through Medicaid with “[t]he right to privacy with regard to accommodations, medical treatment, written and telephonic communications, visits, and meetings of family and of resident groups”). I would therefore not dismiss this claim, pursuant to Section 2(4)(xxi) of the UTPCPL, insofar as it alleges deceptive conduct involving bills and care plans which could directly impact purchasing decisions.[2]
I also question the Majority’s decision to sustain Golden Gate’s Preliminary Objection X, alleging that the Commonwealth may not recover restitution or restoration for itself under Section 4.1 of the UTPCPL, 73 P.S. § 201-4.1. Because the Majority has already dismissed the underlying substantive claims, there is no need to decide whether the Commonwealth is a “person in interest” entitled to restitution or restoration under Section 4.1 of the UTPCPL, and therefore the question is moot and the discussion merely dicta. I do not believe the Court should address a complex issue of first impression in dicta.[3] This is particularly true where, as here, the resolution of the issue is subject to differences of opinion. I am not convinced that the Supreme Court’s determination in Meyer v. Community College of Beaver County, 625 Pa. 563, 93 A.3d 806 (2014) (Meyer II), that the UTPCPL does not include a political subdivision or agency in its definition of “a ‘person’ subject to liability” would necessarily mean that the Attorney General could not be a “person in interest” here, in bringing a cause of action under Section 4.1. I agree with the Majority that “[w]hen the meaning of a word or phrase is clear when used in one *241 section, it will be construed to mean the same thing in another section of the same statute.” Housing Auth. of Cnty. of Chester v. Pa. State Civil Serv. Comm’n, 556 Pa. 621, 730 A.2d 935, 945-46 (1999) (emphasis added). However, the Supreme Court has found that the UTPCPL is not clear, but is ambiguous as to the meaning of the word “person.” Meyer II, 93 A.3d at 814. In Meyer II, the Supreme Court applied the principles of statutory construction to that ambiguous term and reasoned that the General Assembly could not have intended to include political subdivisions as a person subject to liability because imposing liability would violate the longstanding principle that government entities are not subject to punitive damages, and because the purpose of the statute is to protect consumers from merchants, not from the government. Id. at 814-15. That reasoning is not applicable here because no liability will be imposed upon a government entity; instead, the Commonwealth is seeking restitution and restoration from Golden Gate, a merchant, for money the Commonwealth paid as a result of the alleged deception. Given that the Supreme Court has found the term “person” ambiguous as used in the UTPCPL, an interpretation that the Commonwealth can be a “person of interest” in the restoration provision is permissible and consistent with our mandate to construe the terms of the UTPCPL “liberally to effect its object of preventing unfair or deceptive practices.” Com., by Creamer v. Monumental Props., Inc., 459 Pa. 450, 329 A.2d 812, 817 (1974).[4]
For the foregoing reasons, I respectfully dissent to the Majority’s decision to dismiss the Commonwealth’s claim under Section 2(4)(xxi) of the UTPCPL on the basis of an objection that was not raised by Golden Gate but raised sua sponte by this Court. I also disagree that the Court should address a complex and significant issue of first impression in dicta and question the Majority’s resolution of that issue. In all other areas, I concur.

. Act of December 17, 1968, P.L. 1224, as amended, 73 P.S. §§ 201 — 2(4)(v), (ix), (x).

. I recognize that care plans are created after a resident arrives at a nursing care facility. However, the relationship between residents, and their representatives, and the facilities are ongoing, and the services are arguably continually purchased. In addition, care plans are amended as needs change. Therefore, I cannot say at this early stage, that the allegations here could not affect whether residents and/or their representatives can make informed decisions regarding whether to continue to purchase services from a particular facility. See, e.g., the federal Resident's Bill of Rights, 42 U.S.C. §§ 1395i — 3(c), 1396r(c), and associated regulations, which require that residents who receive assistance through Medicare or Medicaid be given care plans and be provided with the opportunity to be involved in the crafting of and amending of such plans; 42 U.S.C. § 1395i-3(c)(l)(A)(i) (providing for ”[t]he right [of Medicare recipients] to ... be fully informed in advance about care and treatment, to be fully informed in advance of any changes in care or treatment that may affect the resident’s well-being, and (except with respect to a resident adjudged incompetent) to participate in planning care and treatment or changes in care and treatment”); 42 U.S.C. § 1396r(c)(l)(A)(i) (providing the same for those residents that receive assistance through medical assistance programs administered by states (Medicaid)); see also 42 C.F.R. § 483.10 (detailing the rights of residents in long term care facilities); 42 U.S.C. §§ 1395i — 3(c)(l)(B)(iii), 1396r(c)(l)(B)(iv) (providing for the right to be informed "periodically during the resident's stay, of services available in the facility and of related charges for such services”).

. The same principle applies to the Majority’s decision to address Golden Gate’s Preliminary Objection XII. There is no need for the Majority to hold that the Commonwealth cannot pierce the corporate veil when the Majority already dismissed all the substantive claims asserted.

. I believe that this relief could nonetheless be available under Section 4 of the UTPCPL, 73 P.S. § 201-4, if the Commonwealth can prove a claim under Section 2(4)(xxi). Section 4 provides the Attorney General with the authority to seek injunctive relief if it has reason to believe that any person has violated the substantive provisions of the UTPCPL. In interpreting a similar provision of the Federal Trade Commission Act (FTC Act), 15 U.S.C. §§ 41-58, as amended, federal courts have uniformly held that because the FTC Act provides the government with the authority to seek injunctive relief, the panoply of equitable power are also available to the courts to deprive a defendant of unjust gains. I note that we may look to federal decisions under the FTC Act for guidance in interpreting similar provisions in the UTPCPL. Com., by Creamer v. Monumental Props., Inc., 459 Pa. 450, 329 A.2d 812, 818 (1974). The Attorney General under the UTPCPL sits in the same position as the FTC sits under the FTC Act. See e.g., Fed. Trade Comm’n v. Commerce Planet, Inc., 815 F.3d 593, 599 (9th Cir. 2016), cert. denied sub nom. Gugliuzza v. Fed. Trade Comm’n, - U.S. -, 137 S.Ct. 624, 196 L.Ed.2d 515 (2017), and cert. denied sub nom. Gugliuzza v. Fed. Trade Comm’n, - U.S. -, 137 S.Ct. 624, 196 L.Ed.2d 515 (2017) (concluding “[t]he equitable jurisdiction to enjoin future violations of § 5(a) [of the FTC Act, 15 U.S.C. § 53(b)] carries with it the inherent power to deprive defendants of their unjust gains from past violations”); Fed. Trade Comm’n v. Mylan Labs., Inc., 62 F.Supp.2d 25, 37 (D.D.C.), on reconsideration in part sub nom. Fed. Trade Comm'n v. Mylan Labs., Inc., 99 F.Supp.2d 1 (D.D.C. 1999) (holding that the FTC may seek disgorgement or any other form of equitable ancillary relief once an injunction is issued under Section 13(b) of the FTC Act); Fed. Trade Comm'n v. Sec. Rare Coin & Bullion Corp., 931 F.2d 1312, 1316 (8th Cir. 1991) (“The [trial court] has broad remedial discretion to grant an appropriate form of equitable relief under section 13(b) of the [FTC] Act”).